IN RE DISQUALIFICATION OF MCKAY.

COBB ET AL. *v.* SHIPMAN ET AL.

[Cite as *In re Disqualification of McKay,* 135 Ohio St.3d 1286,

2013-Ohio-1461.]

*Judges—Affidavit of disqualification—R.C. 2701.03—Affidavit of disqualification should be filed as soon as possible after incident giving rise to claim— Affidavit of disqualification is not a vehicle to contest matters of substantive or procedural law—Media reports standing alone are not persuasive indicators of a public perception of partiality—Affidavit denied.*

(No. 13-AP-011—Decided March 6, 2013.)

ON AFFIDAVIT OF DISQUALIFICATION in Trumbull County Court of Common Pleas Case No. 2006-CV-2992.

_____

**O'CONNOR, C.J.**

{¶ 1} Joseph A. Farchione, counsel for defendants in the underlying case, Dr. Tara Shipman and Associates in Female Health, Inc., has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge W. Wyatt McKay from presiding over any further proceedings in case No. 2006-CV-2992, now pending on plaintiffs' motion for prejudgment interest in the Court of Common Pleas of Trumbull County.

{¶ 2} Farchione alleges that throughout this lengthy litigation, plaintiffs' counsel have engaged in "deceptive manipulations of the law and fact in their arguments" and that Judge McKay has "almost universally accepted" their representations. Farchione further claims that Judge McKay's rulings have

created an appearance of bias or prejudice against Shipman "to the point that an entire medical community believes there is no way to get a fair trial in his courtroom."

{¶ 3} Judge McKay has responded in writing to the allegations raised in Farchione's affidavit, asserting that his rulings were not the result of any bias or prejudice and that they have not created any appearance of impropriety. Judge McKay further claims that "criticism in the community by certain interested groups of people does not equal evidence of judicial bias or prejudice."

{¶ 4} Martin F. White, one of the attorneys for plaintiffs in the underlying case, has filed an affidavit and memorandum opposing Farchione's affidavit. White avers that Judge McKay has not shown any bias or favoritism toward any party in the litigation.

{¶ 5} For the reasons explained below, no basis has been established to order the disqualification of Judge McKay.

**Judge McKay's adverse rulings**

{¶ 6} Farchione suggests that Judge McKay's "consistently adverse and prejudicial rulings" against Shipman have created an appearance of bias mandating the judge's disqualification. Farchione sets forth a long list of such adverse rulings—including the judge's refusal to declare a mistrial based on a comment made by plaintiffs' counsel during voir dire, his rulings on various motions in limine and regarding witness testimony at trial, the judge's final jury instructions, his orders on posttrial motions, and his signing of a writ of execution of judgment without a hearing. These allegations, however, do not establish bias, prejudice, or a disqualifying interest under R.C. 2701.03.

{¶ 7} First, an affidavit of disqualification must be filed "as soon as possible after the incident giving rise to the claim of bias and prejudice occurred," and failure to do so may result in waiver of the objection, especially when "the facts underlying the objection have been known to the party for some time." *In re*

*Disqualification of O'Grady*, 77 Ohio St.3d 1240, 1241, 674 N.E.2d 353 (1996). The events giving rise to Farchione's affidavit occurred years ago. Specifically, the underlying trial occurred in September and October 2010, and the most recent challenged ruling was made in September 2011, when Judge McKay signed the writ of execution. Yet Farchione did not file his affidavit until February 2013. If Farchione believed that Judge McKay's conduct demonstrated bias or prejudice, he should have timely sought disqualification, i.e., "as soon as possible after the incident giving rise to the claim of bias and prejudice occurred." *Id.* Because nothing in the record justifies the delay in filing the affidavit of disqualification, Farchione has waived the ability to seek Judge McKay's disqualification based on his adverse rulings.

{¶ 8} Second, contrary to Farchione's assertions, whether Judge McKay erred in any of the various rulings cannot be litigated in an affidavit-of-disqualification proceeding. It is well established that an affidavit of disqualification "is not a vehicle to contest matters of substantive or procedural law." *In re Disqualification of Solovan*, 100 Ohio St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 4. And a party's disagreement or dissatisfaction with a court's legal rulings, even if those rulings may be erroneous, is not grounds for disqualification. *In re Disqualification of Floyd*, 101 Ohio St.3d 1217, 2003-Ohio-7351, 803 N.E.2d 818, ¶ 4. Farchione may submit his legal arguments to the court of appeals, but the chief justice's statutory and constitutional authority to decide whether a judge can serve fairly and impartially does not authorize the removal of a trial judge because a party is unhappy about a series of rulings. Moreover, "[a] party is not entitled to a certain number of favorable rulings, and a judge must be free to make rulings on the merits without the apprehension that a disproportionate number of rulings in favor of one party will create the impression of bias toward that party or against its adversary." *In re Disqualification of*

*Lawson*, 135 Ohio St.3d 1243, 2012-Ohio-6337, 986 N.E.2d 6, ¶ 7, citing Flamm, *Judicial Disqualification*, Section 16.3, 449 (2d Ed.2007).

**Alleged public reaction to Judge McKay's rulings**

{¶ 9} Farchione also argues that Judge McKay's adverse rulings have resulted in an "erosion of public faith" in the court's ability to fairly adjudicate Shipman's case. Specifically, Farchione claims that the local medical community has "waged a very public protest campaign" and that local physicians believe that Shipman "cannot and will not get a fair trial or fair treatment after trial." According to Farchione, the fact that so many members of the medical community have lost faith in Judge McKay demonstrates the existence of an appearance of impropriety.

{¶ 10} "The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8. In general, media reports or editorials suggesting judicial bias, standing alone, are not competent sources on which to base an affidavit of disqualification, and they cannot act as a barometer of the reasonable-person standard. *See* Flamm, Section 5.7, at 131-133, citing *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F.Supp. 1077, 1080 (D.Colo.1991) ("articles and features in the media suggesting impropriety cannot act as a barometer of the reasonable observer standard"); *In re Detroit*, 828 F.2d 1160, 1168 (6th Cir.1987) ("letters and articles * * * do not necessarily mean that the public believes [the judge] is biased"); *Datagate, Inc. v. Hewlett-Packard Co.*, 941 F.2d 864, 871 (9th Cir.1991) ("fact that the judge's decision was reported in the newspapers is not persuasive of a public impression of partiality").

**{¶ 11}** More important, Farchione has not substantiated his allegations on these claims. He attaches to his affidavit items that he labels "protest materials," which he claims demonstrate that the local medical community believes that Shipman will not receive a fair trial. The alleged protest materials—which include newspaper letters to the editor and newspaper articles—for the most part are not specifically directed against Judge McKay, but involve local physicians' concerns regarding the rising cost of medical-malpractice insurance in Mahoning and Trumbull counties. While most of the letters and articles mention the jury verdict in the underlying case of *Cobb v. Shipman*, only one of the provided items directly criticizes Judge McKay. Specifically, Farchione includes a copy of a faxed letter, which appears to be dated September 16, 2011, from the president of the medical staff at Trumbull Memorial Hospital. The author addressed the letter to his colleagues and requested that they attend a staff meeting to discuss the "latest OUTRAGEOUS ATTACK on Tara Shipman, M.D. by Marty White and his bedfellow, Judge McKay." (Capitalization sic.) This one letter does not establish that the public—or even the local Trumbull County medical community—questions the impartiality of Judge McKay or that the alleged public protests against Judge McKay are so strong that disqualification is warranted.

**Conclusion**

**{¶ 12}** It has long been held that "absent extraordinary circumstances, a judge will not be subject to disqualification after having presided over lengthy proceedings in a pending case." *In re Disqualification of Celebrezze*, 94 Ohio St.3d 1228, 1229, 763 N.E.2d 598 (2001). No extraordinary circumstances are present here. Farchione points to no action on the part of Judge McKay that demonstrates bias, prejudice, or a disqualifying interest. Further, "[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re*

*Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome in this case.

{¶ 13} For the reasons stated above, the affidavit of disqualification is denied. The case may proceed before Judge McKay.

———————————