[Cite as *Baughman v. Baughman*, 2021-Ohio-2019.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

CHRISTINE A. BAUGHMAN

    Appellant

    v.

JOSHUA R. BAUGHMAN

    Appellee

C.A. No.    29870

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2018-05-1364

DECISION AND JOURNAL ENTRY

Dated: June 16, 2021

---

HENSAL, Presiding Judge.

{¶1}    Christine Baughman appeals a judgment entry of the Summit County Court of Common Pleas, Domestic Relations Division. For the following reasons, this Court reverses.

I.

{¶2}    The Baughmans married in 2006 and have not had any children together. At the time of the marriage, Husband was a highly valued employee of a tire company, but he did not own any stock or have an ownership interest in the company. In 2011, the tire company was purchased by another company. Although Husband continued to work for the new company, he received five million dollars in exchange for signing a five-year non-compete agreement, which would begin to run upon his conclusion of employment with the new company. Husband's employment at the new company ended in October 2012. The parties used some of the five million dollars to buy businesses, to buy and flip houses, and to live off during periods in which Husband was unemployed.

{¶3}    In May 2018, Wife filed a complaint for divorce and Husband subsequently counterclaimed for divorce.  The parties entered into a separation agreement on every issue except for disposition of the remainder of the five million dollars.  That issue was tried before a magistrate over three separate days in 2019.  In February 2020, the magistrate found that the amount was paid to Husband in exchange for his signing of the non-compete agreement, rejecting Husband's argument that it was deferred bonus compensation from the original tire company.  The magistrate nevertheless found that, because the payment arose from a non-compete agreement, it was Husband's separate property and awarded the remaining amount entirely to him.  Wife objected to the magistrate's decision, but the trial court overruled her objection and adopted the magistrate's decision.  Wife has appealed, assigning two errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING COMPENSATION PAID TO HUSBAND DURING THE MARRIAGE PURSUANT TO A NON-COMPETE AGREEMENT WAS A NON-MARITAL ASSET.

{¶4}    In her first assignment of error, Wife argues that the trial court incorrectly found that the non-compete payment was Husband's separate property.  "We review a property division in a divorce proceeding to determine whether the trial court abused its discretion."  *Stepp v. Stepp*, 9th Dist. Medina No. 03CA0052-M, 2004-Ohio-1617, ¶ 10.  The characterization of property as marital or separate, however, is a question of fact that we review under a manifest weight of the evidence standard.  *Ostmann v. Ostmann*, 168 Ohio App.3d 59, 2006-Ohio-3617, ¶ 9 (9th Dist.).  If the parties contest whether an asset is marital or separate property, the asset is presumed to be marital property unless it is proven otherwise.  *C.S. v. M.S.*, 9th Dist. Summit No. 29070, 2019-

Ohio-1876, ¶ 16. The party seeking to have the asset declared separate property has the burden of proving that the asset is separate property. *Id*.

{¶5} Revised Code Section 3105.171 governs the division of marital and separate property. Under Section 3105.171(A)(3)(a)(i), marital property includes "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage[.]" Husband acknowledges that he received the five-million-dollar payment in April 2011, which was during the marriage. He also acknowledges that he departed the new company 18 months after signing the non-compete agreement, which was October 2012. Under the terms of the agreement, Husband agreed not to compete for five years after he left the company. Accordingly, the agreement concluded in October 2017. Wife did not file for divorce until May 2018.

{¶6} Although the definition of marital property is broad, it "does not include any separate property." R.C. 3105.171(A)(3)(b). Under Section 3105.171(A)(6)(a), "[s]eparate property" means "[a]n inheritance by one spouse * * * during the course of the marriage; * * * [a]ny real or personal property * * * that was acquired by one spouse prior to the date of the marriage; * * * [and] [p]assive income and appreciation acquired from separate property by one spouse during the marriage[.]" It also includes "[a]ny real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation[,]" "[a]ny real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement[,]" "[c]ompensation to a spouse for the spouse's personal injury," and "[a]ny gift of any real or personal property * * * made after the date of the marriage and that is proven by clear

and convincing evidence to have been given to only one spouse." The compensation Husband received for signing the non-compete agreement does not fall into any of those categories.

{¶7} The trial court did not analyze Section 3105.171 in determining whether the non-compete payment was marital or separate property. Instead, it determined that any proceeds of a non-compete agreement are separate property under this Court's decision in *Blodgett v. Blodgett*, 9th Dist. Summit No. 13547, 1988 WL 110926 (Oct. 19, 1988). In *Blodgett*, the parties married in 1975 and around the same time Mr. Blodgett purchased a company. At some point prior to the parties' separation in 1986, Mr. Blodgett sold the company for several million dollars. Three payments were at issue in the case: (1) the initial sale payment, (2) an incentive payment to Mr. Blodgett if the net worth of the company increased by a certain amount by August 31, 1989, and (3) a future payment to Mr. Blodgett if he did not compete with the purchaser. This Court determined that the initial payment and incentive payment were both marital assets. *Id*. at * 2. It determined that the future non-compete payment was Mr. Blodgett's separate property, however, because it was "solely to prevent [him] from exercising his business acumen in competition against [purchaser]." *Id*. This Court noted that there was evidence that, absent the agreement, Mr. Blodgett could start a new company that could supplant the purchaser and that the non-compete payment was worthwhile to the buyer to protect its investment. *Id*.

{¶8} There are substantive differences between *Blodgett* and this case. First, *Blodgett* predates Section 3105.171 and its definitions of marital and separate property. There are no similar definitions discussed in *Blodgett*. Second, the non-compete payment had not been made by the time of the parties' divorce in *Blodgett* and remained conditional on Husband's continued adherence to the non-compete agreement. In this case, Husband received the payment in 2011 and had fully completed the non-compete agreement by the time of the parties' divorce. *Blodgett*,

therefore, is legally and factually distinguishable from this case. This case is also distinguishable from the other cases cited by the trial court and Husband, each of which rely on *Blodgett*. *Banchefsky v. Banchefsky*, 10th Dist. Franklin No. 09AP-1011, 2010-Ohio-4267, ¶ 5 (explaining that party signed non-compete agreement after petition for divorce was filed and that agreement would not conclude until five years after the divorce); *Brown v. Brown*, 10th Dist. Franklin No. 93AP-634, 1993 WL 498150, *8 (Dec. 2, 1993) (explaining that the nature of the non-compete agreement at issue was of future income because it was calculated by taking husband's base pay and multiplying it by the number of years he would be prohibited from competing); *Hoeft v. Hoeft*, 74 Ohio App.3d 809, 811-815 (6th Dist.1991) (explaining that non-compete agreement was entered into while divorce action was pending and that the associated payment, which was payable in monthly installments, was husband's future earnings).

{¶9} Husband argues that part of the five-million-dollar payment qualifies as his separate property because it was actually paid to him as a bonus for his years of outstanding service to the original tire company. According to Husband, because he began working for that company before the marriage, at least part of the bonus constitutes his separate property under Section 3105.171(A)(6)(a)(ii) because it is property he acquired before the date of the marriage. The trial court, however, rejected this argument and found that the entire sum was paid by the new company in exchange for Husband's agreement not to compete with it for five years after he leaves the company.

{¶10} *Blodgett* did not hold that every sum received in exchange for a non-competition agreement is a party's separate property. It has also been supplanted by the definitions of marital and separate property now found in Section 3105.171. Upon review of the record, we conclude that the trial court incorrectly determined that the remaining balance of the five million dollars that

Husband received in exchange for entering a non-compete agreement is his separate property. The payment does not meet any of the definitions of separate property under Section 3105.171(A)(6)(a). Wife's first assignment of error is sustained.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ACCEPTING THE PARTIES' SEPARATION AGREEMENT AS TO SPOUSAL SUPPORT BEFORE COMPLETING ITS PROPERTY DIVISION AND IN FAILING TO REVISE THE SPOUSAL SUPPORT ORDER AFTER ITS PROPERTY DIVISION DECISION WHICH ALLOCATED HUSBAND TWO MILLION DOLLARS IN SEPARATE PROPERTY.

{¶11} In her second assignment of error, Wife argues that the trial court should have revisited the spousal support award after finding that the payment Husband received for signing the non-compete agreement was his separate property. Considering the resolution of Wife's first assignment of error, we conclude that this issue is moot. *See* App.R. 12(A)(1)(c).

III.

{¶12} Wife's first assignment of error is sustained. Her second assignment of error is moot. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division is reversed, and this matter is remanded for proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JENNIFER HENSAL
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

CORINNE HOOVER SIX, Attorney at Law, for Appellant.

RANDAL LOWRY and ADAM MORRIS, Attorneys at Law, for Appellee.