[Cite as *M.K. v. K.M.*, 2024-Ohio-5147.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

M.K.

    Appellant

    v.

K.M.

    Appellee

C.A. No.     23CA012054

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    20DR088507

DECISION AND JOURNAL ENTRY

Dated: October 28, 2024

---

HENSAL, Judge.

{¶1} K.M. ("Husband") appeals an order of the Lorain County Court of Common Pleas, Domestic Relations Division, that granted an annulment to M.K. ("Wife"). This Court affirms in part and reverses in part.

I.

{¶2} Husband and Wife married on May 16, 2019. On November 5, 2020, Wife filed a complaint for divorce and annulment. The complaint alleged that Husband "represented to [Wife] that he had greater financial assets than he in fact possessed," that she relied upon his representations when she agreed to marry him, that he made the representations falsely and with knowledge of their falsity, and that she justifiably relied on his false representations. Husband moved to dismiss the complaint, arguing only that the Franklin County Court of Common Pleas, Domestic Relations Division, had jurisdictional priority. On December 23, 2020, Wife filed an

amended complaint that included more specific information about Husband's alleged financial misrepresentations.

{¶3} On January 6, 2021, Husband moved to dismiss the amended complaint with respect to Wife's request for an annulment. In his motion to dismiss, Husband argued that false representations about financial status do not constitute fraud for purposes of annulling a marriage. On February 3, 2021, before the trial court ruled on Husband's motion to dismiss, Wife filed a second amended complaint. In support of her request for annulment, the second amended complaint asserted not only that Husband misrepresented his financial position but also that he misrepresented his desire to have children. According to Wife's allegations, Husband told her that he did not want to have children "after they were married and he had obtained his green card . . . ." She also alleged that the marriage was "devoid of sexual relations" when she filed her complaint. Husband answered the second amended complaint, although Wife failed to request leave to file it or to obtain Husband's consent.

{¶4} The parties entered stipulations and agreed that the only issue before the trial court for decision was whether the marriage should end in divorce or annulment. After conducting a hearing, a magistrate concluded that Wife was entitled to an annulment because she had demonstrated by clear and convincing evidence that Husband "committed fraud in inducing [Wife] to marry him with his claims of wanting children, only to be solely interested in obtaining his 'green card' from the Immigration Department." The trial court entered a decree of annulment on the same day under Civil Rule 53(D)(4)(3)(i). The trial court overruled Husband's objections, and he attempted to appeal. This Court dismissed the attempted appeal, however, because the decree of annulment did not address spousal support or the division of the parties' property.

{¶5}	On October 23, 2023, the trial court entered a judgment that granted Wife an annulment and resolved the matters noted in this Court's dismissal. Husband appealed again, asserting two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN CONSIDERING [WIFE'S] SECOND AMENDED COMPLAINT WITHOUT [WIFE] HAVING SOUGHT LEAVE OF THE TRIAL COURT OR AGREEMENT OF [HUSBAND] TO FILE [HER] SECOND AMENDED COMPLAINT.

{¶6}	Husband's first assignment of error argues that the trial court abused its discretion by considering Wife's second amended complaint. This Court does not agree.

{¶7}	Civil Rule 15(A) provides, in part:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

*See also King v. Divoky*, 2021-Ohio-1712, ¶ 38-39 (9th Dist.). Rule 15(A), therefore, allows amendment of a complaint once as a matter of course within twenty-eight days of service of a motion to dismiss filed under Civ.R. 12(B)(6) or a responsive pleading, whichever occurs earlier. *King* at ¶ 39, quoting *Hunter v. Rhino Shield*, 2019-Ohio-1422, ¶ 13 (10th Dist.). Subsequent amendments cannot be made without leave of court or consent of the opposing party. Civ.R. 15(A).

{¶8}	Relying on cases interpreting Federal Rule of Civil Procedure 15(A), some Ohio courts have concluded that when a second amended complaint is filed without leave of court or

consent of the opposing party, "the amended complaint is without legal effect." *Hunter* at ¶ 17, citing *IBEW, Loc. Union No. 8 v. Kingfish Elect., LLC*, 2012-Ohio-2363, ¶ 13 (6th Dist.). Those federal cases, however, take a more nuanced approach, concluding that when a party fails to request leave of court or obtain consent of the opposing party, the amendment "may either be considered a nullity" or, if the amendments do not result in undue surprise or prejudice, "taken as properly introduced[.]" *Mattingly v. Jeff Ruby's Louisville, LLC*, 2019 WL 7407708, *2 (W.D.Ky. Feb. 6, 2019).

{¶9} Wife acknowledges that she did not obtain leave of court or Husband's consent to file the second amended complaint in this case. Nonetheless, Husband answered the second amended complaint without objection and litigated this matter on the substance of the allegations contained in it. According to statements made by counsel during arguments on the objections to the magistrate's decision, the magistrate allowed the second amended complaint during a previous hearing, but there is no transcript of that hearing in the record. Regardless, there is no indication that Husband suffered undue surprise or prejudice as a result of the filing. Under these circumstances, this Court cannot conclude that the trial court erred by treating the second amended complaint as properly introduced. Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT [WIFE] WAS ENTITLED TO AN ANNULMENT, FINDING THAT THE MARRIAGE OF THE PARTIES WAS VOID AND OF NO EFFECT.

{¶10} In his second assignment of error, Husband argues that the trial court erred by concluding that Wife was entitled to an annulment because there was insufficient evidence to support that conclusion. This court agrees.

**{¶11}** A marriage may be annulled if, at the time of the marriage, "the consent of either party was obtained by fraud, unless such party afterwards, with full knowledge of the facts constituting the fraud, cohabited with the other as husband or wife." R.C. 3105.31(D). Fraud consists of:

> an actual or implicit misrepresentation of material facts made with knowledge that the representation is false or with disregard for its truth or falsity with the intention of misleading the other party into relying upon it, and a reliance by the other party upon the misstated facts with a resulting injury . . . .

*Slavin v. Slavin*, 1985 WL 6983, *4 (8th Dist. June 27, 1985). The fraud alleged "must be in a matter essential to the marriage relationship itself or affecting the legality of the union." *Stepp v. Stepp*, 2004-Ohio-1617, ¶ 5 (9th Dist.). Fraudulent conduct in inducing a party to marry is not enough. *Id*. False representations regarding a party's financial position, for example, will not justify an annulment on the basis of fraud. *Id*. at ¶ 6. Nor is "error or disappointment in personal qualities or character" sufficient. *Joy v. Joy*, 12 Ohio Dec. 574, 576 (C.P. 1927).

**{¶12}** The trial court adopted the magistrate's decision, which concluded that Husband induced Wife to marry him with the prospect of having a family so that he could obtain his green card, and the trial court entered a judgment annulling the parties' marriage on that basis. Husband maintains that this conclusion is not supported by clear and convincing evidence, as required by Section 3105.31(D). *See Nwankwo v. Uzodinma*, 2022-Ohio-565, ¶ 18-19 (12th Dist.). Clear and convincing evidence is evidence that will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶13}** In this case, the parties married on May 16, 2019, and they had been in a relationship for approximately one year at that time. Wife acknowledged that she knew at the time

of the marriage that Husband was not a United States citizen. Wife testified that she wanted a husband "who was open to having children and building a family" and that honesty and the ability to provide financially were important to her. According to wife's testimony, Husband indicated that he was "more than open" to having a family and they would talk about it. Both before and after the marriage, the parties engaged in consensual sex without birth control. Because Wife was in nursing school in Northeast Ohio, the parties did not live together full-time, but her testimony indicates that they did live together at Husband's apartment in Columbus on a regular basis. She explained that after they married, Husband began working longer hours and did not spend as much time with her.

{¶14} Wife testified Husband obtained a green card in December 2019. The parties continued to live together for approximately nine months after that happened, although wife testified that the parties did not have consensual sex from that point forward. In September 2020, the parties had an argument, and Wife testified that Husband became violent. Wife testified that the next day, she told Husband that she wanted a divorce. Later that day, she confronted him about "how he lied to me about money, all the property, finances and stuff[,]" and Husband told her that he did not want to have children.

{¶15} The trial court relied on *Nwankwo*, 2022-Ohio-565, at ¶ 22, for the proposition that when one party marries another solely for the purpose of obtaining a green card, misrepresentations prior to the marriage relate to the essence of the marital relationship. In *Nwankwo*, the parties were childhood neighbors in Nigeria who renewed their acquaintance through social media as adults. The husband initiated discussions about marriage and, according to the wife, insisted that he move to the United States with her. *Id.* at ¶ 25. The evidence indicated that the parties never consummated their marriage and suggested that the husband represented that it was due to a

medical problem on his part. *Id.* at 31. Before the husband obtained his United States citizenship, the parties started IVF treatments. After he obtained his citizenship, however, the husband's behavior changed dramatically: he secretly separated his assets, communicated with relatives that he was looking for a way to leave the marriage, stopped attending IVF treatments, and frequented online escort and dating websites. *Id.* at ¶ 28-29. The trial court concluded that the husband obtained the wife's consent to marriage by fraud, and the court of appeals affirmed, concluding that "circumstantial evidence shows that [the husband] had an ulterior motive and undisclosed intent for the marriage" and "[t]he trial court could reasonably infer from the evidence that [he] intended to exit the marriage as soon as he had obtained his goal and as soon as it was expedient." *Id.* at ¶ 32.

{¶16} In this case, however, the circumstantial evidence from Wife's testimony falls short of clear and convincing evidence that Husband used promises of having children to induce her to marry him for the purpose of obtaining a green card. Wife's testimony about Husband's desire to have children was vague: that he was "open" to doing so falls short of an affirmative representation. In addition, Wife's testimony indicated that Husband actually behaved in a manner consistent with that representation before and after the marriage by engaging in intercourse without using birth control. Although Wife testified that Husband's behavior toward her changed because he started working longer hours and was not available to spend as much time with her, she acknowledged that this changed after they married. She did not connect the change in Husband's behavior to his green card. The parties continued to live together after he obtained his green card, although Wife testified that they no longer had sex at that point. It was not until nine months later that, during an argument, Husband told Wife that he did not want to have children.

**{¶17}** The trial court, therefore, erred by concluding that Wife had established that she was entitled to an annulment under Section 3105.31(D) by clear and convincing evidence. Husband's second assignment of error is sustained.

III.

**{¶18}** Husband's first assignment of error is overruled. His second assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and this matter is remanded to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part,<br>reversed in part,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JENNIFER HENSAL
FOR THE COURT

STEVENSON, P. J.
LANZINGER, J.
CONCUR.

APPEARANCES:

TROY A. MURPHY, Attorney at Law, for Appellant.

ALEXIS M. GACEY, Attorney at Law, for Appellee.